194 So.2d 241 (1967)
STATE of Florida, Petitioner,
v.
William Eugene BARTON, Respondent.
No. 34991.
Supreme Court of Florida.
January 4, 1967.
As Amended on Petition for Clarification January 25, 1967.
*242 Earl Faircloth, Atty. Gen., and John S. Burton, Asst. Atty. Gen., for petitioner.
J. Robert McClure, Jr., of Fokes, Peeples & McClure, Tallahassee, for respondent.
DREW, Justice.
The decision of the district court in this cause together with that in another proceeding reaching a contrary result is presented upon a certificate finding that they pass upon a question of great public interest within the constitutional intendment.[1] This question is defined only as "relating to the showing which must be made by a movant and reflected by the court records before he is entitled to be heard by the sentencing court on the allegations of his motion for relief," under Criminal Procedure Rule I, F.S.A. ch. 924 Appendix.
The motion filed by the respondent Barton, quoted in full in the dissenting opinion below,[2] asserts that he and his co-defendants were "not represented in the best of our interest" and were "not given counsel of our own choice." The movant sets forth no particulars of the "substantial grounds to prove our innocents" which he contends counsel could have secured if he "had our interest at heart," but states only that he was not "given counsel of which would take the necessary steps to avoid the possibility of a future prison term ie. counsel that would advise we the defendants here in such a way as to avoid making a statement which might later be used as evidence against us in court."
The order of the trial court recited service of notice of hearing on the motion upon the prosecuting attorney and found that "the grounds upon which the motion is filed do not warrant the production of the prisoner at the hearing." Upon consideration of the original record of conviction the order further "finds from the record in this cause that defendant was ably represented by court appointed counsel * * * at the time he plead guilty to the offenses * * *; that movant presents no basis, details or clarification of his allegation that if the Public Defender had *243 been appointed `he would have been able to secure substantial grounds to prove our innocents'; that such allegations are not substantiated by the facts in the court proceedings and appear to have no merit, and movant is not entitled to the relief requested."
The original record of the convictions in this case reflected the formal appointment of counsel on the same date on which the informations were filed, the defendants arraigned, and pleas entered. Upon examination of the record the appellate court concluded that the above order must be reversed for the taking of evidence on the issue of whether counsel studied and "made an adequate investigation of each of such charges before pleading appellant guilty." On this issue the motion to vacate asserts only that the defendants were "not represented in the best of our interest." The conclusion of the appellate court is that this motion required a scrutiny of the record, which in this case shows, as above noted, that counsel was appointed on the same date defendant plead guilty to multiple charges of breaking and entering and larceny occurring over a two-month period in the area where he was tried.
We think the appellate court reversal and remand for submission of evidence as to the adequacy of legal representation in these circumstances is necessarily based on a conclusion that the record itself, showing the defendant had counsel appointed only on the day of arraignment and plea, presents that issue and requires further evidence for disposition. Certainly the contention on appeal that defendant's lawyer never conferred with him, if in fact such was directly asserted,[3] cannot affect the question of whether any factual issue was presented by the bare statement in the motion herein that defendant was not represented "in the best of [his] interest."
We are of the opinion that the appellate court in this case erred in reversing, and that the trial court complied with the requirements of the rule and properly concluded that the motion to vacate the sentences, upon the record before him, presented no factual allegations justifying a further hearing on the issue of whether the defendant had effective counsel within the constitutional due process requirements. The rule provides that a motion thereunder requires a hearing and findings of fact "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief * * *."[4] This provision, however, is designed primarily to prescribe the standard governing the disposition of a motion, without a hearing, on the ground of record refutation of a movant's allegations, and to require, for example, that the record in an appropriate case show conclusively that a movant alleging to the contrary did in fact have counsel or make waiver. We think the issue, even in the case of a proper motion on the rationale outlined in the opinion below, would be that of opportunity for study or investigation rather than actual performance of those duties by counsel.[5] Where, as in this case, the record affirmatively reflects such opportunity, then no hearing should be required absent allegation of other facts material to the issue.
The provision of the rule, by its literal terms and apparently under uniform construction in the federal courts, does not eliminate the basic requirement that such motions set forth facts, rather than conclusions, showing the basis of relief in order to warrant a hearing to determine the *244 truth or falsity of such facts.[6] The most liberal of our decisions regarding sufficiency of allegations in habeas corpus, preceding the current rule, support this minimum requirement.[7]
Upon consideration of the history and construction of the statute[8] upon which our rule is patterned, we conclude that record facts such as those involved in this case should raise no inference either as to lack of effective representation or invalidity of the plea of guilty upon which the convictions rest. To the contrary, the decisions favor a strict construction of this ground for post conviction relief.[9] The limitation *245 of time alone, or the consequent necessity for a motion for continuance, appears in the circumstances of this case to be one of the numerous matters resting in the judgment and discretion of counsel in the handling of a defense,[10] and the propriety of *246 a ruling on these matters is of course subject only to direct appellate review in the normal course of events.[11]
In collateral proceedings generally, then, an allegation that counsel was appointed on the date of or at the inception of trial would not, contrary to the statements in some of the recent decisions,[12] be sufficient on its face. While the controlling principles will naturally vary with the facts of each case in which the claim of ineffective counsel arises, the test in evaluating allegation or proof on the issue should remain that of determining not merely the length of time allowed for preparation but whether the limitation of time, together with other facts or ensuing events, was such as to deprive the defendant of a trial in any real sense.
The writ is issued, the decision of the district court herein is quashed, and the cause remanded for further proceedings in accordance with this opinion.
THORNAL, C.J., CALDWELL and ERVIN, JJ., and WAYBRIGHT, Circuit Judge, concur.
NOTES
[1] State v. Barton, D.C.A.1st, 182 So.2d 655, McCray v. State, D.C.A.1st, 181 So.2d 729.
[2] Ibid., 182 So.2d p. 657. Honorable J. Robert McClure, Jr., counsel for respondent in this cause, was appointed by this Court to represent respondent solely in these certiorari proceedings as well as in the consolidated case of McCray v. State, no. 35,138, 194 So.2d 246. In such capacity he has rendered valuable service to the respondent and this Court. The deficiencies in the proceedings below occurred long before Mr. McClure entered the case.
[3] Such a fact stated in the motion would however, present an issue different from that of alleged insufficiency of time, unless in context the latter meaning was clearly intended. See Simpson v. State, Fla.App., 164 So.2d 224.
[4] Rule 1, Florida Rules of Criminal Procedure, Vol. 23, F.S.A.
[5] Simpson v. State, Fla.App., 164 So.2d 224.
[6] United States v. Trumblay, C.A.7 1958, 234 F.2d 273, 275, and 256 F.2d 615, cert. den. 358 U.S. 947, 79 S.Ct. 355, 3 L.Ed.2d 353; United States v. Mathison, C.A.7 1958, 256 F.2d 803, cert. den. 358 U.S. 857, 79 S.Ct. 77, 3 L.Ed.2d 91; Walker v. United States, C.A.7 1955, 218 F.2d 80; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830. "General allegations that the defendant was ineffectively represented by counsel are insufficient unless they are accompanied by a detailed statement of such a factual situation which, if established, would show that the representation of counsel was of such a kind as to reduce the trial to a farce or a sham and to shock the conscience of the court." United States v. Edwards, D.C., 152 F. Supp. 179, 185.
[7] Wood v. Cochran, Fla. 1960, 118 So.2d 193. See also Wooten v. State, Fla. App. 1964, 163 So.2d 305.
[8] Sec. 2255, Title 28 U.S.C.A.
[9] Cases collected United States v. Wight, C.A.2, 176 F.2d 376, 379.

"For these reasons we think absence of effective representation by counsel must be strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it. We do not believe that allegations even of serious mistakes on the part of an attorney are ground for habeas corpus standing alone. The cases where the Supreme Court has granted habeas corpus on the ground that there was no fair trial support this interpretation of the absence of effective representation. They are all cases where the circumstances surrounding the trial shocked the conscience of the court and made the proceedings a farce and a mockery of justice. Measured by the test of these cases the allegations in the petition before us are insufficient to require a hearing. * * *
"The petition shows on its face that the charge against assigned counsel of intimidation and coercion and of ignorance and neglect is based solely on the advice of counsel that petitioner had better plead guilty to the lesser charge of grand larceny than go to trial on the indictment of robbery, because, otherwise, he would likely be found guilty on his previous record and be given a heavier penalty.
"This may have been an unwise recommendation, but, on the other hand, it may very well have been sound and practical advice and, lacking the charge of corrupt or improper motive, is not enough. In the nature of things, no hearing now will throw conclusive light on that question. I am therefore of the opinion the District Judge was correct in dismissing the petition without hearing." Diggs v. Welch, 80 U.S.App. D.C. 5, 148 F.2d 667, 670.
See also Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707, 709:
"It must be realized that this is not a case in which proof of guilt depended upon a trial. In such cases, the accused usually relies to a great extent on counsel to conduct an effective defense, because the accused does not know enough of the law to do so himself. While the accused may have to take the consequences of a poor defense, he may at least say the fault was not his own. But this is not so when he pleads guilty. Here the deed is his own; here there are not the baffling complexities which require a lawyer for illumination; if voluntarily and understandingly made, even a layman should expect a plea of guilty to be treated as an honest confession of guilt and a waiver of all defenses known and unknown. * * *
"Certainly ineffective assistance of counsel, as opposed to ignorance of the right to counsel, is immaterial in an attempt to impeach a plea of guilty, except perhaps to the extent that it bears on the issues of voluntariness and understanding.
* * * * *
"It may be argued that a plea of guilty is not understandingly made when defendant is unaware of certain technical defenses which might very well make the prosecutor's job more difficult or even impossible were he put to his proof. However, we think `understandingly' refers merely to the meaning of the charge, and what acts amount to being guilty of the charge, and the consequences of pleading guilty thereto, rather than to dilatory or evidentiary defenses."
[10] the case at bar, the defendant seeks to sustain his contention that he was denied effective representation by counsel principally by the allegation that his counsel should not have allowed him to pead guilty, but should have insisted on a trial. He also asserts that counsel conferred with him only once. A single conference is, however, frequently enough. Lawyers, both those who are assigned by the court and those who have been retained, frequently advise their clients to plead guilty, if upon a scrutiny of the case they reach the conclusion that there is no defense. They do so in the hope of placing their clients in a better position to receive leniency, since the fact that the defendant pleads guilty is a consideration that the court frequently takes into account in the imposition of sentence. * * *
"For the reasons above indicated, the Court concludes that the allegations of ineffective representation of counsel are not sufficiently supported by facts to justify a hearing. * * *" United States v. Edwards, note 4 supra, 152 F. Supp. p. 186.
"But, it is argued to us, all Mitchell now wants is a hearing on his petition and that surely he should have a hearing. There is a crux of the difficulty. What would the hearing concern? It would concern the professional competence of Mitchell's trial counsel. Mitchell, of course, if granted such a hearing, would have a right to put on evidence; he would endeavor to demonstrate his counsel was incompetent. The lawyer involved would have a right to put on evidence; he would try to show the competence of his advocacy. The issues would be those specified by Mitchell in his petition. The proceeding would be public, of course. The judge would decide whether the lawyer's conduct was ineffective or effective, incompetent or competent. Obviously such a proceeding, if permitted generally, would ensue upon almost every guilty verdict; almost every convicted person can think up several points in his trial where the course taken by his lawyer could have been different; and he has nothing to lose by a few extravagant claims.
"Trial counsel must make many decisions of an almost infinite variety in the course of a criminal trial: whether to advise a plea to a lesser offense; whether to object; whether to offer a witness of possibly doubtful credibility or with a criminal record; whether to risk crystallizing the view of the judge at that point by a motion for directed verdict before the defense testimony is in; whether to advise the defendant to take the stand and subject himself to cross examination; how to argue the case to the jury; whether to advise the defendant not to go to trial at all but rather to rely upon the mercy of the court. All these and more are practical questions and very real questions. Bad judgment, or even good but erroneous judgment, may result in adverse effects. These are simple facts of trial; they are not justiciable issues. * * *
"If a movant under Section 2255 makes no allegations of ineffectiveness or incompetence of counsel, save in matters normally within the realm of counsel's judgment, he is not entitled to a hearing. Under such circumstances a hearing would be useless, an inexcusable waste of time, energy and money, because even if the movant proved what he alleged he would not be entitled to relief. The substantial considerations we have discussed forbid that a useless formality, fraught with serious consequences to the administration of law, be indulged to no purpose." Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, 792, 794.
Cf. Brooks v. State, Fla.App. 1965, 176 So.2d 116, for a contrasting test on direct appellate review of an order denying continuance.
[11] Ibid, 259 F.2d pp. 791, 792:

"The rule that matters open upon appeal cannot be raised collaterally rests upon a solid foundation; it is not a technicality. Justice must have order; it cannot exist in chaos. In fairness an accused is given an opportunity to present to a reviewing court his allegations of error upon his trial. But the essence of justice is the application of law to duly established facts. Normally, review must come while the matter is fresh, while witnesses, judges and lawyers are available, while memories are accurate. Hence the Rules of Procedure establish time limits for the taking of such a review. Those Rules have been adopted both by the Supreme Court and by the Congress. To permit a convicted person to wait months, or even years as is frequently the case, after the actors have gone and recollections cannot be refreshed, and then to secure review consideration of alleged errors open upon the normal processes of appeal, is to damage, if not destroy, an essential element in the rule of law, the element of accurate impartiality. Of course, and we emphasize it, if an accused has not had a trial, and a fair one in the jurisprudential sense of that word, the courts will supply a remedy. We do so upon occasion. But it is an extraordinary remedy. Courts ought not  must not  forget that our vaunted rule of law is a structure of rules; it is not an amorphous jelly of judicial pleasure. The rule of law is government by rules properly adopted. The precise opposite of that prized system is a practice of disposing of each case without regard to rules and according to the individual and perhaps ephemeral pleasure  or opinion  of a judge. The rule that questions open upon appeal must be raised by appeal is a rule of law, and it is a sound and solid rule.
* * * * *
Cf. French v. State, Fla.App. 1964, 161 So.2d 879, 881.
[12] Watson v. State, Fla.App. 1964, 169 So.2d 887.