PIERCE, Chief Judge.
Appellant Billy Roque appeals to this Court from a judgment of conviction entered against him in the Hillsborough County Criminal Court of Record after a trial and adverse verdict in a prosecution for possession of heroin.
The sole question involved on this appeal is Roque’s contention that the trial Court was in error in proceeding to trial with the Court-appointed Public Defender representing Roque. The unusual circumstances of the case leading up to the actual trial give rise to such contention, although the point lacks merit in the light of such facts.
Information was filed in the Hillsborough County Criminal Court of Record on October 31, 1969, charging Roque with having in his possession on September 24, 1969, a certain narcotic drug, to-wit heroin. On November 18, 1969, the case came up before *713 the Court in due course for arraignment and entry of plea. From this point on up to the ultimate jury trial and conviction there was a continuing and recurring colloquy between the Court, Roque himself, and adversary counsel as to Roque’s legal representation for the trial.
The Public Defender representing Roque on this appeal waxes eloquent in his brief in contending that when Roque was eventually tried he did not have the benefit of counsel with sufficient knowledge of the case and adequate opportunity for preparation beforehand to afford Roque adequate representation. But the record lodged here, in its broad aspects, does not sustain such accusation; also, that whatever situation Roque was in when he finally went to trial was caused practically entirely by his own default in not carrying out the previous orders of the Court as to procuring private counsel (which he insisted upon) rather than Court-appointed counsel; and lastly, that it affirmatively appears Roque had the benefit of adequate and well-informed counsel at the trial.
At the risk of appearing redundant, we think it would be illuminating to quote directly from the record as to exactly what happened on each occasion that the case came before the trial Court for further proceedings or disposition, especially in this era of “modern thought” when frequently whatever the trial Court does in any criminal case becomes thereafter the target for accusations of denial of due process, refusal of equal protection and all the other gamut of Constitutional rights, real or imaginary.
We have already mentioned that on November 18, 1969, the case was in due course called up in open Court for arraignment and plea of Roque on the information. We here quote from the record on that date:
“MR. LAZZARA [for the defense] : Your Honor, this defendant [Roque] was represented by Mr. Bill Switalski, whom I am associated with, through the preliminary hearing. This case was called up for arraignment last week, I believe, and was continued by this Court until this time, for purposes of entering into some arrangement or agreement as to representation, which we were not able to do at this time, your Honor. And at this time we will be withdrawing as counsel for the defendant.
THE COURT: Well, since you made an appearance, I am going to require you to represent him for the purposes of arraignment and thereafter we will let you out.
MR. LAZZARA: In other words, he will be arraigned today, your Honor?
THE COURT: Yes.
MR. LAZZARA: Okay.
THE COURT: Read the charge to him, Mr. Ayala.
MR. AYALA [for the State]: All right, you are Billy Roque, is that correct?
THE DEFENDANT ROQUE: May I talk to him a minute please?
THE COURT: All right.
(Conference between the defendant and Mr. Lazzara.)
MR. AYALA: You are Billy Roque ?
THE DEFENDANT ROQUE: Yes, sir.
MR. AYALA: Let me read the Information to you, charging possession of heroin.
Harry Lee Coe, III, Acting County Solicitor of the 13th Judicial Circuit in and for the County of Hillsborough, charges that you, Billy Roque, on the 24-th day of September, 1969, in the County of Hillsborough and State of Florida, did unlawfully and feloniously possess and have control of a certain narcotic drug, to-wit, heroin, a further description of which is to the County Solicitor unknown.
*714 To that Information charging possession of Heroin, how do you plead, guilty or not guilty ?
(Defendant stood mute).
THE COURT: All right, enter a plea of not guilty for him. Set it for trial date.
MR. AYALA: December the 12th, if that’s acceptable to the defendant.
THE DEFENDANT ROQUE: I would like it later than that.
THE COURT: Let me see your docket for that date. Well, let’s set a trial date in January, Mr. Ayala, when we have a relatively open date there.
MR. AYALA: All right. Mr. Roque, January the 15th acceptable to you?
THE DEFENDANT ROQUE: A little later than that, if it could be.
MR. AYALA: Well, I think that’s fair, under the circumstances.
THE COURT: January 15?
MR. AYALA: Yes sir.
THE COURT: All right. Mr. Lazzara, the Court will allow you to withdraw — that’s what you want to do at this point, now?
MR. LAZZARA: Yes, your Honor.
THE COURT: All right, Mr. Roque, your case is set for trial on January 15. Barring something unforeseen, it will go to trial on that date. So, it’s up to you to either get counsel to represent you and if you are unable to get counsel to represent you, then it’s up to you to contact the Public Defender and be ready for trial on that date. Now, is that clear to you?
THE DEFENDANT ROQUE: Yes, sir.
THE COURT: All right.
MR. LAZZARA: Thank you, Your Honor.”
So on November 18, 1969, after the foregoing colloquy in open Court, a not guilty plea was entered and the case set for trial on January 15, 1970, during which interval Roque was instructed by the Court to get private counsel to represent him or “contact the Public Defender and be ready for trial on” January 15th — all of which was “clear” to Roque.
On January 15, 1970, the day the case had been set for trial as aforesaid, the case was called, with Roque before the Court and the following proceedings appear from the record:
MR. MACKENZIE [for the State]: Billy Roque.
THE COURT: The Public Defender’s Office represents Billy Roque?
MR. RAWLINS [Public Defender]: No, we do not, your Honor. It is my understanding that Mr. Roque went to see Judge Durrance late yesterday afternoon, and the Judge referred him to our office to determine if there was some way we could help him. And Mr. Roque did come to my office again this morning. And I understand that he does have some funds and that he is in the process of hiring an attorney and is desirous of a continuance in the case and will be able to hire his own attorney if the Court sees fit to continue it. I could not under any conditions, Judge, try the case on such short notice, and I am sure Judge Dur-rance did not intend to put me in that position if he were here. I think all he wanted me to do was try to assist Mr. Roque in obtaining at least a continuance so he can hire counsel. And he does have some monies available at this time, not quite enough, and he feels he will be able to get his own attorney.
THE COURT: What does the State have to say?
MR. MACKENZIE: Your Honor, I don’t see from a legal standpoint any choice than that the matter be continued. But I would ask that the Court instruct *715 the defendant that he has had ample opportunity to have counsel appear for him and that the State intends to go to trial on this case the next time it comes up.
THE COURT: All right. Reset the case for trial.
MR. RAWLINS: I would ask the Court or the State to set it in March, if at all possible. We have, I have so many jail cases during the rest of January and February, Judge. This is a bond case. Even though I am not going to represent him, he needs this additional time, and I would so request it.
MR. MACKENZIE: Judge, since the Public Defender doesn’t represent the man, I would object to his statement, and I would object also to a distant date because the case has been set for some time. And I would like to set the case February 26, if that is agreeable with the Court.
THE COURT: February the 26th for trial. As soon as you hire your lawyer, tell him to notify the State so they will know who is representing you.”
So February 26, 1970, was the new date set in open Court for trial. On that date the case was again called in open Court, with Roque present, and we quote from the record as to the proceeding on that day when the case was called:
‘•MR. MACKENZIE: Billy Roque.
THE COURT: All right, you are Billy Roque ?
THE DEFENDANT: (Nodded affirmatively.)
THE COURT: Do you have a lawyer ?
THE DEFENDANT: Your Honor, I am right now in the process of hiring an attorney and I need a little bit more time, you know, so I can get the rest of the money.
THE COURT: Let me see his file.
THE DEFENDANT: I will get my own attorney if you will give me a little bit more time.
THE COURT: Well, now, I have given you two continuances already.
THE DEFENDANT: I believe it is one, your Honor, if I’m—
THE COURT: Well, that’s correct apparently. One continuance already to this date and at that time I instructed you to be ready to go to trial today.
THE DEFENDANT: Well, your Honor, I just haven’t had enough money and I will by the next time.
THE COURT: I also told you at the time if you were unable to get a lawyer to contact the Public Defender.
THE DEFENDANT: Yes, sir. Well—
THE COURT: I told you that, didn’t I?
THE DEFENDANT: I know, but like I want to have my own attorney and I will have him because I have got part of the money, but not all of it. And if you will give me a little bit more time, by the next time I come here I will have my attorney.
THE COURT: Well, I am not going to do it unless — it depends on what we have got to try. What does the State wish to proceed on?
MR. MACKENZIE: Your Honor, the State is ready for trial in this case and, in fact, only in this case under the circumstances as they have developed with respect to the other cases. I would like to point out to your Honor, that Judge Burnside admonished the defendant in your absence on January 15 to be certain that this matter concerning representation was taken care of. And as I say, the State’s ready. And I would like to, and have made, arrangements with Judge Burnside’s court reporter to have those minutes of the previous continuance made a part of this record, and along with desire on my part to make a part of the record some previous proceed *716 ings relating to this defendant involving trial without attorney. And as I say, the State is ready and we would object very strenuously to a continuance because the defendant was told, and I know he recalls that, that the State intended to be ready and that he should do certain things, and I think Judge Burnside’s comments to him will bear that out.
THE COURT: Well, I also—
THE DEFENDANT: Like I say, I have part of the money, your Honor, and I need a little bit more time to get the rest of it. I already talked to Mr. Bob Mitcham and he is willing to represent me for a certain amount. And I have only got part of it and I need a little bit more time and I will have my attorney here. Just give me a little bit more time. That’s all I need.
THE COURT: Well, I am not going to do it if the State is ready to proceed for trial.
THE DEFENDANT: I have no attorney, your Honor. What am I going to do?
THE COURT: Well, you have been instructed to do that and you have been instructed to get in touch with the Public Defender if you were unable to get counsel.
THE DEFENDANT: I did, your Honor, and he said as long as I have some money that he can not legally represent me. See, I am not a pauper. I have got some. I will get the rest of it. I need a little bit more time, your Honor.
THE COURT: Well, he will represent you.
THE DEFENDANT: I have got witnesses I have got to subpoena and things like that, your Honor. I will appreciate it if you give me a little bit more time, at least, at least a couple of weeks.
THE COURT: No. I am not going to do it.
THE DEFENDANT: You mean I have, to stand trial today with no attorney?
THE COURT: Either today or tomorrow, which is your desire, Mr. Mackenzie?
MR. MACKENZIE: Well, your Honor, we have made arrangements with all our witnesses for trial today, which is the day that we told Mr. Roque that we intended to go to trial and we have other cases tomorrow and I think that the time has come for the interests of the State to be protected.
THE COURT: We will go to trial on this case, Mr. Roque. Mr. Rawlins, you or Mr. Luckey one—
MR. RAWLINS: Judge, may I? I must state to the Court, I realize the position the defendant is in, I realize the position of the Court. I must say, though, and I must put it in the record, that I know nothing about this case. I have-—
THE COURT: That’s understandable, Mr. Rawlins. I understand that. Go ahead and—
MR. RAWLINS: I would like to clear the record for my own protection.
THE COURT. Go ahead.
MR. RAWLINS: I must state to the Court that I know nothing about the facts of this case. I have never discussed the facts of this case with Mr. Roque. I have had, I think, one or two conversations with him, but only concerning his trying or attempting or hiring an attorney to represent him. I think at one time Mr. Roque, he stated to me, that he did have the sum of, and I can’t remember the exact amount, I think it was five hundred or eight hundred dollars. I wouldn’t say which it was, but there was a sizeable sum, which, in my opinion, led me to believe that he would not be in a position to sign an insolvency affidavit on those facts and under the circumstances and under the condition that the case was continued the last time, which was, it was continued for him to obtain an attorney. And, in fact, I interceded at that point at the suggestion of the Court to get a *717 continuance in order for him to hire a lawyer and knowing that he had stated to me previously that he did have this money. And I think this is all in the minutes of the Court. I just want to put myself in the position that I know nothing about this case. I have not had an opportunity to file any motions whatsoever. I have not had an opportunity to even know who the witnesses are or to subpoena any witnesses or to do anything that would enable me to be in a position to adequately represent this defendant at the trial of the case, nor have any of my assistants or anyone in my office to my knowledge had any contact with Mr. Roque other than myself, and possibly Mr. Crumb-ley [investigator] may have talked to him concerning only the things that I have already stated in the record.
MR. MACKENZIE: Your Honor, I would like to say in response to that that what we have just heard in the event that the Public Defender has to assist or is asked to assist Mr. Roque is an insertion of material for the purpose of appeal, if we should be so fortunate as to have an appeal in this case. And I think it is time that the interest of the State in situations like this is protected under circumstances which will show beyond any question that if the Public Defender does assist Mr. Roque in this case it is much more than he is entitled to on the basis of his past experience with the law and on the basis of the advice he’s been given prior to this day.
THE DEFENDANT: Your Honor, I just maybe need about two more weeks to get the rest of the money and I will get it. I just need that much.
THE COURT: Well, you knew when the case was set, Mr. Roque, and you had your instructions on it. We will proceed with it.
MR. RAWLINS: Judge, may I make one request that my schedule, since my office is being put in the position that I am being put in, I would preferably want to try this case myself rather than to put it on one of my assistants, so that when the Appellate Court does come back with this thing if an appeal is taken in the case, that I will be the one to take the brunt of it. And I would respectfully ask the Court at least to give me until tomorrow morning since my schedule for today is, I have an all-afternoon hearing that I have an attorney tied up on who is on the opposing side who has canceled a three-day trip in order to have the hearing that I have scheduled this afternoon previous to this time figuring that I would not have any of my cases go to trial, and if so, my Chief Assistant could immediately take over for me in the event any of these other cases were tried. I would certainly ask the Court and I don’t think it is too much to ask of the Court at least to give me until tomorrow morning. And the cases I have scheduled tomorrow myself, Judge, I believe I have two, possibly three cases that are probably in the position that they will be disposed of, and if not disposed of, I would give preference to this case to try as the Court sees fit.
THE COURT: Well, I don’t see how the Appellate Court could have any criticism of you under these conditions, Mr. Rawlins, because there isn’t any question about your situation and your position in this matter.
THE DEFENDANT: Your Honor, I have only had one continuance only, your Honor. I am sure a lot of people has had three and four, you know, and like I told you, I will get the money.
THE COURT: You were instructed what to do, Mr. Roque, and you didn’t do it.
THE DEFENDANT: Well, your Hon- or, I don’t want to go out and steal the money. I will get it if you will give me at least two more weeks, maybe a week at least.
THE COURT: Well, I told you I am not going to do it, so that’s it. Mr. Raw-lins, suppose you and Mr. Mackenzie come up here.
*718 (A conference at the bench was held between Court and Counsel for both sides.)
THE COURT: All right, Mr. Roque, have a seat at the table.
MR. MACKENZIE: I wonder if we could approach the bench? I have one request in this case before we get started.
THE COURT: All right.
(A conference at the bench was held between Court and Counsel for both sides as follows:)
MR. RAWLINS: Judge, I would like to put in the record in view of the circumstances in this case that having been appointed this morning to represent this man, I move and request the Court to allow me to tell the jury on the voir dire, whether it is me or my assistant that tries the case, to allow my office to tell the jury and inform them of the circumstances under which we, as attorneys, are having to try the case.
THE COURT: Well, I don’t feel that that’s proper because I think that probably would elicit sympathy from the jury for the defendant, to which I don’t think he is entitled to any sympathy. Now, I do fully sympathize with counsel being in the position he is in, but that’s just unfortunate.
(The conference at the bench was concluded.)
THE COURT: Let me have the file. All right.
MR. LUCKEY (Public Defender) : No, sir. We are not ready for trial, your Honor.
THE COURT: Well, I understand, Mr. Luckey. All right, Billy Roque, rise and face the jury. All right, be seated.
(A jury was then duly selected and accepted.)”
The trial finally started and resulted in a verdict of guilty by the jury. Judgment and sentence followed in due course. Roque has appealed to this Court and urges as his only point for reversal the contention that his trial counsel were “not ready” for the case to be tried.
Under all the circumstances, which .could only be fully understood from the verbatim review of the Court proceedings, reversible error has not been demonstrated here. Roque had from the middle of November, 1969, until the following February 26th within which to “get a little more money” with which to employ private counsel which he seemed to strongly desire. He was repeatedly informed by the trial Judge in open Court to either employ private counsel, if he was financially able so to do, or to notify the Public Defender’s office so that office could represent him, both of which he failed or refused to do.
Judge Durrance presided at the November, 1969 and February, 1970 hearings, with Judge Burnside presiding at the January hearing. Obviously from the record, both Judges were most indulgent in trying to accommodate Roque. But there must be, and has to be, some limits in accommodating the desire or “whims” of a defendant charged with a felony. Roque was certainly not denied due process or equal protection or any of his other Constitutional rights at any time by either Judge. See State v. Barton, Fla. 1967, 194 So.2d 241; Buchanan v. State, Fla.App.1966, 184 So.2d 225; Cappetta v. Wainwright, Fla.1967, 203 So.2d 609, 433 F.2d 1027. Enlightening is the uncontradicted statement in the record made by the Assistant County Solicitor that Roque was no stranger to the “strategy” of appearing in Court without a hired lawyer and later pleading that he was tried without proper counsel, referring to a robbery prosecution some four years previously in the same Court which case, because of such reason, resulted in a reversal on appeal.
Lastly, however, a fair consideration of the entire record before this Court shows that Roque was most adequately represented at the trial, not by one, but by two, assistant Public Defenders. We agree with *719 the observation made by the Attorney General in his brief filed here that the representation of Roque by his trial counsel “reveals a skill and a knowledge of trial tactics and subject matter of drug analysis that can only be found among the very talented members of the bar.”
The judgment appealed from is—
Affirmed.
HOBSON and McNULTY, JJ., concur.